Good morning, ladies and gentlemen. Welcome to the 9th Circuit. Judge Schroeder and I welcome our colleague from the 1st Circuit, Judge Lopez, and he's sitting with us on assignment and enjoying better weather than in Maine. It's a great pleasure to be here. Thank you. Basically, I would also like to welcome today, I know that we have a number of visitors from the public. We will have students from Miramontes High School, which I believe that you're right now watching us down in the café, and then you'll be coming into the courtroom later. And then my understanding is we also have law students from Pacific McGeorge that we'll be observing today. So welcome. I don't want to apologize in advance, but these don't move as fastly or are probably, you know, you won't be sitting on the edge of your chair in the same way that you are when you're watching television, but they're actually all very interesting cases and of equal importance to us. I will be calling the matters on calendar in the order that they're listed, and by each case you have a designation of the time. I will be keeping you to the time. We have a full calendar. On the other hand, basically oral argument belongs to the court, and so if any of my colleagues have questions, please answer their questions. The point is to get our questions answered before we decide the case. So even if your time is up and you're in the middle of a really difficult question, you don't need to run or you can't run and not answer the question. You need to finish answering the question. But otherwise, I will keep you to your time. And so if you are the appellant, you have your time right in front of you. The clock counts down, and so when it goes up, that means you've gone into overtime. If you want to reserve any time for rebuttal, that's all included in your time. And so if you tell me when you get to the podium, I'll try to remind you because I'm looking at a clock. However, the point is to get our questions answered, and you may or may not end up reserving time. That being said, we will take just a very short recess after the, let's see, it would be, I guess it's the fourth listed case, but it will be the third case for argument, the Bott case. We'll take a short recess at that time, and then we'll reconvene and hear the last two cases that are on for oral argument. So the first matter on calendar is Jeff Hawkins v. Horrell, Case No. 10-15809. Now, you're not appearing pro bono, are you? I'm sorry? You're not appearing pro bono, are you? No. Oh, okay. I know we have a couple of pro bono matters today. Thank you. All right. Please state your appearance, and you may proceed. Good morning, Your Honors. My name may please the Court. My name is Cori Hong, and I represent Petitioner Jeff Hawkins, and I wish to reserve a minute in rebuttal. There are four reasons as to why my, why this Court should grant my client's petition. The first is that the California courts unreasonably found that Mr. Hawkins was sane. There was uncontested expert testimony establishing that Mr. Hawkins suffered from the mental disease of paranoid schizophrenia and that because of this delusion he was unable to understand that his attack on the victim was morally wrong. Rather, because of this delusion, Mr. Hawkins believed that the victim had shot him 10 years earlier and was about to harm him again. Well, you have a little bit of a different, you're on habeas review and you're controlled by AEDPA, correct? Correct. So, and this is a little bit of a different posture than we sometimes see, because he ended up not guilty and then not guilty by reason of insanity. So we're talking about the sanity phase of the trial. And the sanity, when you get to, after you've been found guilty and you're in the sanity phase, then it flips a little bit. You're presumed to be sane, and you have to show by the preponderance that he's not sane, correct? Yes, Your Honor. All right. Now, you're talking about expert testimony, but expert testimony is not the only way that sanity is addressed. Isn't that correct? Yes, Your Honor. And my review of the record shows that there were, you know, that they, there was, they showed his behavior after. You know, perhaps lying, not, you know, certain things saying that he was over at, was it Aunt Tootsie's? Correct. Yeah, it was at Aunt Tootsie's house. And so they introduced certain other evidence to say, hey, he knew right from wrong because he knew, you know, he knew enough to, you know, make up a story about that he wasn't there. So why, why was the state court wrong? Why were they unreasonable? There were two reasons. First, on the question of why he lied to the police officers. Both experts said that lying to the police was fully consistent with his paranoid schizophrenia and actually having an acute episode at that time. And it was consistent because of the nature of, of the condition that, that it, it, it exposed. Both police officers or both experts? Both experts. Okay. So they explained that that was the reason, and the prosecution never said anything to, to the contrary. Second reason that's important is that in the, the government argued that the jury is permitted. Well, but why then did they introduce his lies? I mean, the implication, the inference from that is that his lying was, showed that he knew right from wrong, right? For a sane person, correct. The evidence introduced by the experts was that for an insane person, that the lying was actually consistent because his episode had ebbed by that point and But if the jury doesn't believe that, they don't have to believe what the experts say, right? Well, that's the question. In Judge Berzon's concurrence in, in the Dennis case, the Ninth Circuit case, Judge Berzon said that there, that in her research there was no published Ninth Circuit case that held that a jury could disregard it for any reason. Rather, she recommended that the Court adopted the four standards recommended by the Eleventh Circuit, which there had to be a showing of either a problem with the factual underpinning, a bias, an inconsistency, or the relevance of any latex. That's not our law. Judge Callahan is way ahead of me. What is the, what is the Federal right that you claim has been violated here? Under More v. Duckworth, that involves, there has to be a sufficiency of evidence to show sanity before a State can incarcerate and punish someone for a criminal matter. That was reaffirmed, that was stated in Duckworth and again in Leland v. Oregon, again clarified that it is unconstitutional to punish someone who doesn't have the criminal intent to commit an offense. Counsel, has the Supreme Court ever even held that there is a constitutional right to a sanity defense? There is no such Supreme Court doctrine. Isn't that correct? Yes, Your Honor. But in Duckworth, they said that as a Federal due process right, if the State law is going to provide this and have evidence for it, there has to be sufficiency of evidence. But aren't you talking about a situation where in some States, proof of sanity, if you will, is an element of the offense and the State has to prove that as it would with any element beyond a reasonable doubt? That's not the law in California. As my colleague has pointed out, we're dealing with an affirmative defense here, and it was the burden of the defendant to establish by a preponderance of the evidence the insanity. It's a very different situation than those situations where the state of mind, the sanity, if you will, is an element of the offense. Your Honor, my understanding is that in Duckworth involved the Indiana law, which had a similar situation where it was an affirmative defense. However, the reason why that was not found to be a violation is because there was conflicting lay testimony that was permitted under Indiana law, which is why the Supreme Court said this would be upheld. However, the quote is that if the record is, quote, totally devoid of evidentiary support of sanity, that that would violate Federal due process. So I would contend that under Moore v. Duckworth, the ADBA prong is met. Back to Judge Callahan's question, though, about the evidence, what's important is that on this record at page 51, the jury was deadlocked during the sanity phase. They sent a note to the judge saying we are deadlocked, there are strong opinions on both sides. And then they asked for the medical records that were gathered when Mr. Hawkins was arrested. And as explained by the expert testimony, they administered, the jail officials administered antipsychotic drugs to Mr. Hawkins after his arrest. That corroborates that he was suffering from the mental defect and also that he was having an episode at the time, which does not then, that corroborates the expert opinion that this is consistent and that any lying is just not the case. You're making a jury argument to me right now. The prosecutors introduced a police interview, facts of the defendant's flight, untruthful responses to the police, and the jury just didn't go your way. And so we're on habeas. We're at a double level of deferential review. And so you need to give me some clearly established Federal law, what the Federal right is, but then, you know, it's not a time to re-argue the sufficiency of the evidence that you argue in the jury trial in the sanity phase. I mean, habeas puts you, unfortunately, in a really different position. Yes, Your Honor. And I respectfully submit that the language, whether the record is, quote, totally devoid of evidence jury support, is the due process. And I would submit that the evidence that you cited is still totally devoid of evidentiary support simply because the flight that the prosecution said was him simply disrobing his clothes when he was arrested. That's consistent with psychotic activity. That's not the traditional person fleeing from the police to show an inference of guilt. The other question that they said was a question of flight was when after attacking this victim, he continued to be in the house, and it was only after the roommate told him to leave did he leave the house. And again, on page 51, the jury asked the judge why did he leave with his possessions. The jury was very concerned, members, at least one member of the jury was concerned about. Well, you can't, you know, I'm not, you know, I tried a lot of cases myself and I sat as a judge in a lot of cases. And what the juries do ask questions, but you can't infer from them who's asking them why they asked them or anything like that. That's just part of the process. Yes, Your Honor, but I think it's improper for the court to speculate that somehow the jury must have rejected it because they believe the revenge factor when the evidence showed that the jury was deadlocked, it was a close call, and they were focused on the medical record. Was the jury ultimately deadlocked or did they reach a verdict? They ultimately reached a verdict, but it shows that there was close, there was a close case, and at one point they were deadlocked during the sanity proceedings. Counsel, in bottom line, you're arguing that in rejecting the expert testimony, this was an irrational jury verdict, which implicates due process. I'm struggling to understand what makes the jury's rejection of the expert testimony as well as other evidence, what makes that an irrational verdict? Your Honor, we submit that it, or I submit that it's unreasonable, and it's unreasonable in comparison to the Pop case. There, one of the experts was biased. There was conflicting testimony that there that defendant was malingering, that he had evidence of planning and concealing the crime after he committed the murder in the Pop case, whereas here the evidence of this defendant is that he was psychotic. He stayed in the house. He continued watching the movie. He reported that this man was about to kill him because he had shot him ten years prior. All of his actions were consistent with the psychotic episode, unlike the Pop case, unlike the Skinner case, I'm sorry, not the Skinner case, unlike the Drew case, where there was conflicting evidence that would actually show that the defendant was malingering or wasn't truly insane in the way that this record compels that he was. If there are no further questions. I just have a few seconds left, but if my colleagues have additional questions after the Respondent speaks, I'll give you a minute for rebuttal. Can I just ask one question? Yes. When is the last, what is the case of this Court that you can cite that where we overturned a jury verdict with respect to a defendant's state of mind on habeas? I can't remember any. I can't remember. May I file a supplemental plea? You can. No, that's all right. I just. Okay. Thank you. I think the answer is there probably isn't one. Yeah. If you don't know it and we don't know it. All right. Thank you, Your Honors. Good morning. If you may, please, the Court. Rene Chacon representing the State of California. This Court should affirm the district court because the district court succinctly found as to the first two, as to the first issue, that the first claim is not cognizable under a DAPA. My opponent has failed to cite to this Court a U.S. controlling U.S. Supreme Court case. Alternatively, the district court found sufficient evidence showing insanity. In this case, the prosecutor impeached both defense psychologists by putting on the interview, but not the actual taped recording. And that was the district attorney's point. He played the full tape and pointed out to the jury, in this case, the defendant was not psychotic. And this is the best evidence because it occurred at the time of the interview. So this is the record. It was taped hours after the beating, whereas the defense psychologist interviewed the defendant for 90 minutes both, a year after the occurrence, and came to the conclusion that on the night of the beating, the defendant was psychotic. The district attorney's point was, look at the evidence of the actual taped interview that occurred hours after the beating. This man is not psychotic. He's pointing, he comes to an alibi. I was at Aunt Tootsie's home at all times. When pressed about the blood on his pants, oh, I fell into some bushes. When pressed again, oh, it's probably my own blood. Time and time again, the DA pointed out that this man was not psychotic, had presented a viable revenge theory when his two roommates asked him, why did you beat King 90? It's because he had shot me 10 years prior. On this evidence, there was enough for the jury to decide and reject the two defense psychologists. Well, I think it's safe to say that the record has a lot of evidence that the defendant was not enjoying good mental health. That's right. And that he had a history of diagnosis of mental illness. But what's the standard at the, you know, what's the California standard regarding sanity? It's the defendant's burden. He's presumed sane. Well, but then he has to, it's you don't know right from wrong, or? Exactly. And he has to rebut the inference by preponderance of the evidence. That's his burden. That's the McNaughton rule is basically, is that the California rule? No. I don't know. Well, the McNaughton rule is right from wrong. Right from wrong. It is right from wrong. And whether that's the McNaughton rule, I don't know. As to the second issue, whether flight, the claim is that the flight instruction denied the defendant due process. Now, we pointed out that the flight instruction was only given as to the guilt phase and not to the sanity phase. My opponent today claims that somehow this flight instruction given on guilt phase denied due process at the sanity phase when the flight instruction was irrelevant, was not given. That's shown by the record clearly. My opponent cannot show a due process violation from that instruction. Well, I think the argument is that in some fashion, a flight instruction has to account for the possibility of insanity, that there needed to be some way in which the two could be reconciled. And even though they take place at different phases of the trial, there at least could be some way in which to reconcile the two. I mean, flight involves consciousness of guilt. That consciousness may be incompatible with the notion of insanity. And I think your opponent is saying that there should have been some attempt to sort of rationalize the two concepts, and there wasn't any attempt to do that here. Well, it was my opponent's burden to seek a modification of instruction if that was the case. And under State law, she abandoned that burden. It was forfeited. So I apologizeable now. Unless there are more pointed questions from the panel. I don't think we have additional. We don't appear to have additional questions. Thank you, Your Honor. There's no requirement to use all your time. Yes. Thank you. We've used your time, but if any of my does anyone have any additional questions of the appellate counsel? All right. Then this matter will stand submitted. Thank you both for your argument.
judges: Schroeder, Lipez, Callahan